**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-30039 |
| Plaintiff-Appellee, | D.C. No. |
| v. | 3:14-cr-05305-RBL-1 |
| LEROY CHARLES, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted May 8, 2017
Seattle, Washington

Before: BEA and N.R. SMITH, Circuit Judges, and HAYES,** District Judge.

Challenging several of the district court's evidentiary rulings, Leroy Charles

appeals his jury conviction for five counts of aggravated sexual abuse of a minor.

We review preserved evidentiary rulings for abuse of discretion and will "uphold

them unless they are 'illogical, implausible, or without support in inferences that

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable William Q. Hayes, United States District Judge for the Southern District of California, sitting by designation.

may be drawn from the facts in the record.'" *United States v. Gadson*, 763 F.3d 1189, 1199 (9th Cir. 2014) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc)). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**1.** The district court did not abuse its discretion by allowing testimony from the alleged victims of uncharged sexual assaults. The district court properly considered the following non-exhaustive list of factors and found them to favor admission:

> (1) "the similarity of the prior acts to the acts charged," (2) the "closeness in time of the prior acts to the acts charged," (3) "the frequency of the prior acts," (4) the "presence or lack of intervening circumstances," and (5) "the necessity of the evidence beyond the testimonies already offered at trial."

*United States v. LeMay*, 260 F.3d 1018, 1028 (9th Cir. 2001) (quoting *Rudy-Glanzer ex rel. Doe v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000)).

The prior acts were sufficiently similar to the charged conduct. With respect to all of the assaults, the victims were Charles's young relatives, and Charles used his familial relationship to gain proximity and access to each of the victims. *See id.* at 1022–23, 1028. He also exerted physical control over nearly all of the victims to accomplish the attacks and used threats to prevent them from reporting the attacks. The district court's finding that the assault on one of the victims of uncharged conduct was not sufficiently similar further indicates that the court carefully

2

considered each prior attack independently. *See United States v. Cherer*, 513 F.3d 1150, 1158–59 (9th Cir. 2008).

The second, third, and fourth factors here are inseverably linked and must be analyzed together. Considering the temporal proximity of the prior assaults, in light of the intervening periods that Charles spent incarcerated, Charles has engaged in a continuous pattern of sexual assaults. Concerning the final factor, the testimony from the victims of uncharged conduct was necessary, because it corroborated the testimony (from the victims of the charged assaults), in a case where Charles's primary defense was to attack the victims' credibility. *See LeMay*, 260 F.3d at 1029–30. Finally, the district court minimized any risk of unfair prejudice by giving the jury multiple limiting instructions. *See Cherer*, 513 F.3d at 1159.

The district court did not abuse its discretion by ruling on the Rule 403 issue prior to hearing the actual testimony of the victims. *United States v. Curtin*, 489 F.3d 935 (9th Cir. 2007) (en banc) does not apply here, because that case involved evidence that (at least part of which) was wholly irrelevant; was inherently highly inflammatory; was inadequately described by the proffer to the district court; and was in written form, which is easily and fully reviewable prior to trial. 489 F.3d at 956–58; *see also United States v. Major*, 676 F.3d 803, 809 (9th Cir. 2012) (distinguishing *Curtin*). The testimony of the victims of uncharged conduct was highly relevant to this case. Both parties represented to the court (through written

filings and oral argument) the facts to which the victim witnesses were expected to testify. These representations generally reflected the material facts as they were later presented at trial and were sufficient to allow the district court to engage in a meaningful analysis of the *LeMay* factors. *See Major*, 676 F.3d at 809 (holding that the parties' representations regarding the substance of anticipated evidence "allowed [the district court] to appreciate fully and to weigh accurately the challenged evidence's probative value and its potential for unfair prejudice"). Unlike the documentary evidence in *Curtin*, the live witness testimony at issue here is not amenable to comprehensive pretrial review. Charles cites no authority to suggest we have ever imposed such a requirement in the case of live witness testimony. Indeed, such a requirement would be largely futile, because (among other reasons) it is entirely possible that, at trial, the attorneys would ask different questions and the witnesses would offer different testimony than they did during pretrial proceedings.

2. The district court did not abuse its discretion in permitting the expert's testimony. This testimony was helpful to the jury, because it provided information about which many jurors would not have sufficient background knowledge—the general dynamics of sexual assault situations. *See United States v. Lukashov*, 694 F.3d 1107, 1116–17 (9th Cir. 2012). And the testimony did not improperly bolster the victims' credibility, because it pertained generally to the class of child sexual

4

abuse victims, rather than to any specific individual victim. *See United States v. Bighead*, 128 F.3d 1329, 1330–31 (9th Cir. 1997) (per curiam); *United States v. Antone*, 981 F.2d 1059, 1062 (9th Cir. 1992). Contrary to Charles's characterization, the expert did not testify about what the jury should "rely on" or "believe," or about what factors indicate that a victim's disclosure is "true" or "accurate." *See United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985), *overruled on other grounds by United States v. Morales*, 108 F.3d 1031, 1035 n.1 (9th Cir. 1997) (en banc).

**3.** The district court did not abuse its discretion when it admitted DM's testimony under Federal Rule of Evidence 801(d)(1)(B) to rebut Charles's contention that PM fabricated her testimony. The district court did not refuse to consider whether PM made the prior statement before the alleged motive to fabricate. *See Tome v. United States*, 513 U.S. 150, 167 (1995). As the alleged motive to fabricate arose when PM learned that Charles would soon be released from prison, or learned that there was an inheritance to which Charles may have some claim, the record shows that PM disclosed her assault to DM before the triggering event.

**4.** The district court did not abuse its discretion in permitting the testimony of Charles's victims about the effects they believed the assaults had on their lives. Charles's primary defense was that the victims fabricated the assaults.

The victims' testimony about these effects tended to corroborate their credibility with respect to whether the assaults occurred and tended to explain why they initially avoided disclosing the assaults.[1]

5.     The district court did not abuse its discretion by allowing testimony concerning Charles's domestic abuse of his girlfriend.[2] Rule 404(b) allows other-acts evidence if "1) it tends to prove a material fact; 2) the prior act is not too remote in time; 3) the evidence is sufficient to support a finding that the defendant committed the act; and 4) where knowledge and intent are at issue, the act is similar to that charged." *United States v. Tsinnijinnie*, 91 F.3d 1285, 1288–89 (9th Cir. 1996). Only the first and third elements could genuinely be disputed. The evidence of Charles's prior violent conduct in CK's presence tends to prove a material fact, because it explains why CK submitted to Charles and was too afraid to report the assaults. *See id.* at 1289. And CK's, Mortensen's, and ZJ's testimonies about the domestic violence were more than sufficient to prove the domestic violence occurred. *See id.*

The evidence also passes a Rule 403 balancing test. The testimony was

---

[1] We decline to address Charles's Rule 403 arguments, because he objected only on relevancy grounds, and he cites no authority substantively supporting his position on this issue.

[2] We decline to address the evidence of drug use. Charles failed at trial to object to the drug evidence and conceded that it was "marginally relevant." On appeal, Charles fails to cite any authority that substantively supports his position.

critical to explain why CK did not resist the assaults as strongly as some of the other victims and did not feel safe to disclose the abuse. Any potential prejudice to Charles was mitigated, because the United States did not ask detailed questions about the violence and the district court gave the jury appropriate limiting instructions. *See United States v. Romero*, 282 F.3d 683, 688 n.1 (9th Cir. 2002) (citing *Dubria v. Smith*, 224 F.3d 995, 1002 (9th Cir. 2000) (en banc)).

6.      Because the district court did not abuse its discretion with respect to any of the challenged evidentiary rulings, Charles's claim of cumulative error fails. *See United States v. Jeremiah*, 493 F.3d 1042, 1047 (9th Cir. 2007).

**AFFIRMED.**